UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Jose L. Linares, USDJ |
| v. | : | Crim. No. 05-482 (JLL) |
| JAMILA DAVIS, a/k/a "Jamila Baker" and BRENDA RICKARD, | : | BRIEF IN SUPPORT OF MOTION PURSUANT TO RULE 29(c) |
| Defendants. | : | |

TO: CHRISTOPHER J. CHRYSTIE
United States Attorney, District of New Jersey
Attention: Donna Gallucio and Jenny Kramer,
   Assistant United States Attorneys
970 Broad Street
Newark, New Jersey 07102

Attached hereto is a brief in support of a Motion for a New Trial pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure made on behalf of the defendant JAMILA DAVIS.

Respectfully submitted,

*/s/ Thomas H. Nooter*
THOMAS H. NOOTER
Attorney for Defendant Jamila Davis
Freeman, Nooter & Ginsberg
30 Vesey Street, Suite 100
New York, NY 10007
(212) 608-0808

-1-

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Jose L. Linares, USDJ |
| v. | : | Crim. No. 05-482 (JLL) |
| JAMILA DAVIS, a/k/a "Jamila Baker" and BRENDA RICKARD, | : | BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO |
| Defendants. | : | RULE 29(c) OF THE F.R. Crim. Proc. |

Statement of Facts

Jury Selection: On the first day of the trial when the jury venire was brought into the Courtroom we started jury selection, and counsel for the defense noted that out of the 43 prospective jurors sent up to the courtroom by the jury clerk only one was African-American.

At the end of the first day counsel moved to strike the entire venire, stating that this lack of African-American and other minority jurors was statistically improbable, based on an unscientific but empiracle observations that the African-American population of the District is significantly higher than one in 43. At that time the Court granted until the following morning to review the law on the subject of general objections to the selection process of a jury venire in a federal district, and we argued the point again. The Court denied the motion to disband the jury and proceed with a new venire, citing, among other reasons, that the application was not timely. See trial at T. 43-46, 51-57, and 2.3-2.6.

If given the opportunity at a post-trial hearing, the defense would submit that the 2000 census records for the eight counties which make up the portion of the State of New Jersey from

which jurors are drawn for service in the U.S. District Court[1] in Newark shows that 15.28% of the population is African-American.[2]  The percentage of African-Americans on the actual panel of 43 prospective jurors was 2.3%. We note that there was a very low percentage of other racial groups as well, but as stated in the argument during the jury selection process, it is the lack of African - American jurors which caused the greatest concern to the defense.

If a hearing is granted on this issue, the defense will attempt to produce more accurate and more recent statistics on the percentage of African-Americans in the jury pool based on age and citizenship, if such are available.

The defense further notes that the District Plan talks of various sources for the drawing of prospective jurors, and the process of making a random selection from those sources. (See "Plan" at pp. 3-7. Although the procedure appears fair on its face, there is no evidence in the record as to the actual source information used by the Clerk at this time to create the pool of potential jurors. If a hearing is granted the defense would wish to submit testimony or the affidavit of staff members of the Clerk's Office on what sources are actually used (since the Plan is merely a suggestion for potential source lists).

<u>Jury Charge</u>: At the close of the evidence we had a charge conference in which the defendant Jamila Davis, through counsel, objected to some of the language in the proposed instruction on "materiality," stating that the citing reference supplied by the government did not actually contain the language submitted by the government. (See "Government's Proposed Jury

---

[1] See the "Plan of Implementation of the United States District Court for the District of New Jersey Pursuant to the Jury Selection and Service Act of 1986," p. 2. [Hereinafter, "Plan;" the Plan is available at the District Court's website.]

[2] Census information available from the U.S. Census website.

Charge With Authority" submitted by the government in PDF format). The defense argued that the whole paragraph stating what materiality is "not" should be taken out, but in the alternative, that portions be taken out which relate to the actual reliance, or lack of it, or the justifiability of the reliance or lack of it by the Bank should not be submitted to the jury as part of the definition of "materiality."

The Court ruled that the paragraph was a correct statement of the law and declined to excise the language objected to by the defense. T. 10.211-10.215.

<u>Argument</u>

POINT I

THE COURT SHOULD GRANT A HEARING ON THE PANEL SELECTION PROCESS USED IN THE DISTRICT OF NEW JERSEY TO DETERMINE WHETHER THE PROCESS UNFAIRLY EXCLUDES MEMBERS OF THE AFRICAN-AMERICAN COMMUNITY FROM THE JURY POOL, AND IF SO, GRANT A NEW TRIAL.

The defense first raised the issue on the fairness of the jury selection process during the first day of jury selection, and articulated the argument somewhat more fully the next day, after the jury was selected but before they were sworn.

Since that time counsel for the defendant has looked at some U.S. Census information and at the Plan of Implementation of the United States District Court for the District of New Jersey Pursuant to the Jury Selection and Service Act of 1986, and determined that the statistical likelihood of getting only one African-American in 43 when the African-American population of the counties which comprise the District division used for jury pools for trials at the Newark

Courthouse is over 15% (which should result in about 6 African-Americans in a pool of 43 prospective jurors).

Timing of the Motion:

The statute governing applications to challenge the system for selecting the prospective jury venire is 28 USC § 1867, which states in part:

Challenging compliance with selection procedures

(a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

We concede that we did not make the motion before voir dire examination began, though we argue that the motion was made within seven days of discovering the statistical improbability that the jury panel was fairly selected. Although we realize that there is no right to having a particular panel be racially fair, we argue that the extreme imbalance between what should have been normal and what really existed was prima facie evidence that the jury selection system is flawed, and that until we saw the actual make-up of the panel, we could not have had notice of the failure.

Substance of the Motion:

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a . . . . trial[] by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. Amend. VI. The American concept of the jury trial contemplates a jury drawn from a fair cross section of the community. . . . It is part of the

established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." Taylor v. Louisiana, 419 U.S. 522 (1975). We concede that this requirement of a fair cross section is not without limits: it does not guarantee that juries be "of any particular composition." Id. at 419 U.S. 538.

The leading case on challenging the jury pool selection process in the Third Circuit appears to be United States v. Weaver  267 F.3d 231 (3rd Cir. 2001), which says:

> African-Americans and Hispanics are "distinctive" groups for the purposes of a fair cross-section analysis. Castaneda v. Partida, 430 U.S. 482, 495, 51 L. Ed. 2d 498, 97 S. Ct. 1272 (1977) ("It is no longer open to dispute that Mexican-Americans are a clearly identifiable class."); Ramseur, 983 F.2d at 1230 ("African-Americans are unquestionably a constitutionally cognizable group."); see also United States v. Royal, 174 F.3d 1, 6 (1st Cir. 1999) ("There is no dispute that . . . Blacks are unquestionably a "distinctive" group for the purposes of a fair cross-section analysis."); United States v. Jackman, 46 F.3d 1240, 1246 (2d Cir. 1995) ("There is little question that both Blacks and Hispanics are 'distinctive' groups in the community for purposes of this test.").

The Court in Weaver noted: "We must be careful to note that intentional discrimination need not to be shown to prove a Sixth Amendment fair cross section claim. Duren, 439 U.S. at 368 n. 26. Under Duren, "systematic exclusion" can be shown by a large discrepancy repeated over time such that the system must be said to bring about the underrepresentation..."

The defense notes that if the Court reverses its ruling denying the motion based on the timeliness of it, then the defense requests an opportunity at a hearing on the merits of the claim to offer evidence, and perhaps expert testimony or reports, on the manner of selection of the pool of prospective jurors. We have not done a study of systematic exclusion over a long period of time because if the motion is being denied on timeliness grounds, it is hardly worth the expense and labor of conducting such an analysis. The Weaver decision suggests, however, that over time a

system which persistently shows a failure of keeping representation of "distinctive groups" below what their presence in the population of the District should require. 267 F.3d at 245.

Thus, if the Court will grant a hearing on the issue, we will undertake to examine the process and the results over time which, as a prima facie matter, appear to be unfair in the exclusion of African-American prospective jurors.

POINT II

THE COURT IMPROPERLY DENIED THE DEFENSE APPLICATION TO REMOVE ALL OR PARTS OF THE LAST PARAGRAPH OF THE PROPOSED CLOSING INSTRUCTIONS TO THE JURY ON "MATERIALITY" OF ALLEGED FRAUDULENT STATEMENTS.

The Jury Charge requested by the government contained a correct statement of law, to wit, "you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision..." and then followed this with a four-line paragraph which largely undercut the effect of the materiality requirement:

> "It is not necessary for the bank in question to actually have acted upon the facts alleged to be material. Thus, the United States is not required to prove that the bank relied on these facts, whether any reliance by the bank was justifiable, that the bank was in fact misled or influenced by them, or that the bank suffered any actual loss as a result of them."

The government cited United States v. Neder, 527 U.S. 1 (1999) in support of the inclusion of this language, quoting the case where it says: "The common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes." But these are not "materiality." The Neder case went on to say: "But while the language of the fraud statutes is incompatible with these requirements, the Government has failed to show that this language is inconsistent with a materiality requirement." Id.at 527 U.S. 25.

-7-

While it is true that <u>Neder</u> is important in that it established that there is, in fact, a materiality requirement in federal criminal bank fraud crimes, the case did not give suggested language for jury instructions, and does not directly support the language the government asked, over defense objection, to include. A review of all of the cases of the Third Circuit, and cases from many other Circuits, failed to reveal any which suggests that the language of the objected-to paragraph should be included as part of a definition of "materiality."

As we argued below, while some of the principles in the offending paragraph are true, the effect of much of it is to undermine the correctly-stated definition of the prior paragraph, which is simply that a statement is materially false if a reasonable person might have relied on or considered in making a decision.

In this case the defendant argued that the banks did not rely on the statements which were false because they were prepared to issue a mortgage so long as the property was worth what the appraisals said it was and so long as the credit rating of the borrower was sufficiently high. This argument may or may not have been convincing, but to tell the jury that it was not necessary that the bank actually relied on the information undercut the "reasonable person" standard which is the law in the Circuit on materiality, because it changed the focus from what a reasonable bank officer might be expected to rely upon. Most specifically, to say that it was not necessary to prove whether the reliance was justifiable contradicted the instruction that it is necessary for the statement to be one upon which a reasonable person would be expected to rely.

For these reasons the instruction, as requested by the government and given by the Court, was error. Since the error went to the heart of the defense in the case, the error was sufficiently prejudicial to require a new trial.

POINT III

THE DEFENDANT RELIES ON ALL THE OBJECTIONS AND LEGAL ARGUMENTS MADE BELOW ON ANY OTHER POINTS RAISED DURING THE TRIAL FOR WHICH A RULING IN FAVOR OF THE DEFENSE WOULD RESULT IN A DISMISSAL OF ANY OR ALL OF THE CHARGES OR A NEW TRIAL ON ANY OR ALL OF THE CHARGES, AND JOINS IN CO-COUNSEL'S ARGUMENTS ON THE ERROR OF CHARGING "WILLFUL BLINDNESS."

The failure to re-raise and re-argue any legal points raised at the trial, including the arguments on the sufficiency of the evidence, is not to be deemed a waiver of those arguments; the defense simply relies on the arguments already made.

The defense further joins with co-counsel in objecting to the "willful blindness" instruction for the reasons stated in his brief.

## Conclusion

For the foregoing reasons the defendant JAMILA DAVIS moves for a judgment of acquittal or a new charge with respect to any and all of the charges of which she was found guilty by the jury.

Dated: New York, New York
October 22, 2007

Respectfully submitted,

*/s/ Thomas H. Nooter*
Attorney for Defendant Jamila Davis
Freeman, Nooter & Ginsberg
30 Vesey Street, Suite 100
New York, NY 10007
(212) 608-0808

TO:    Office of the United States Attorney
          District of New Jersey
          By ECF