NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>BRENDA RICKARD and JAMILA DAVIS,<br><br>Defendants. | Criminal No.: 05-482 (JLL)<br><br><br><br>**ORDER** |

This matter, having come before the Court by way of motions for a new trial filed by Defendants Brenda Rickard and Jamila Davis, respectively, and, for the reasons set forth in this Court's corresponding Letter Opinion dated January 4, 2008,

**IT IS** on this **4th day of January, 2008,**

**ORDERED** that Defendant Rickard's motion for a new trial [CM/ECF Docket Entry No. 110] is **DENIED**; and it is further

**ORDERED** that Defendant Davis' motion for a new trial [CM/ECF Docket Entry No. 111][1] is **DENIED.**

**IT IS SO ORDERED.**

Jose L. Linares
United States District Judge

---

[1] The Court notes that the brief submitted in support of Defendant Davis' motion for a new trial was inadvertently filed as a separate motion on the Court's docket. See CM/ECF Docket Entry No. 115. Thus, the Court hereby directs the Clerk's Office to terminate the motion filed under CM/ECF Docket Entry No. 115.

**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF　　　　　　　　　　　　　　　　　　　　　　　　　　　　MARTIN LUTHER KING JR.
**JOSE L. LINARES**　　　　　　　　　　　　　　　　　　　　　　　FEDERAL BUILDING & U.S. COURTHOUSE
JUDGE　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　50 WALNUT ST., ROOM 5054
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 999
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Newark, NJ 07101-0999
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

January 4, 2008

**VIA ELECTRONIC FILING**

Donna D. Gallucio, Esq.　　　　　　　　　　　　　James W. Parkman, III, Esq.
United States Attorney's Office　　　　　　　　　　The Cochran Firm
970 Broad Street, Room 700　　　　　　　　　　　505 20th Street North, Suite 825
Newark, NJ 07102　　　　　　　　　　　　　　　　　Birmingham, AL 35203

Jenny R. Kramer, Esq.　　　　　　　　　　　　　　Thomas Nooter, Esq.
United States Attorney's Office　　　　　　　　　　Freeman, Nooter & Ginsberg
970 Broad Street　　　　　　　　　　　　　　　　　30 Vesey Street, Suite 100
Newark, NJ 07102　　　　　　　　　　　　　　　　　New York, NY 10007

> **Re:   United States of America v. Brenda Rickard and Jamila Davis**
> **Criminal Action No. 05-482 (JLL)**

Dear Counsel:

　　　This matter comes before the Court by way of motions for a new trial filed by (1) Mr. Michael Pedicini, on behalf of his client, Defendant Brenda Rickard,[1] and (2) Mr. Thomas Nooter, on behalf of his client, Defendant Jamilia Davis. Both motions are brought pursuant to Federal Rule of Criminal Procedure 33.[2] The Court has considered the submissions made in

---

[1] It should be noted that Mr. Pedicini no longer represents Defendant Brenda Rickard in this criminal matter. Attorney James W. Parkman, III filed a notice of appearance on behalf of Defendant Rickard on December 18, 2007. See CM/ECF Docket Entry No. 122.

[2] The Court notes that Mr. Nooter's motion for a new trial appears to be brought pursuant to Federal Rule of Criminal Procedure 29(c) ("Motion for a Judgment of Acquittal"). Mr. Pedicini's motion does not specify under which rule it is brought. Because both motions allege errors of judgment made by this Court, each of which, they claim, warrants a new trial, the Court

1

support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, both motions are DENIED.

## BACKGROUND

As the Court writes only for the parties, a familiarity with the underlying facts in this case will be assumed, and will not be repeated here except where necessary to provide context for the pending motions.

On September 20, 2007, following a nine-day trial, the jury returned a guilty verdict against both Defendants, on all counts. Motions for a new trial were filed by both Defendants on September 26, 2007. Defendants claim, in relevant part, that the Court erred in: (1) denying Defendant Rickard's motion for severance, (2) admitting the testimony of Shaheer Williams as "intrinsic" evidence, (3) allowing certain language in the jury instructions, and (4) denying Defendant Davis' motion to strike the jury venire.

## LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The Court of Appeals for the Third Circuit has instructed that a new trial should be granted only if 'there is a serious danger that a miscarriage of justice has occurred-that is an innocent person has been convicted.'" United States of America v. Armstrong, No. 02: 04CR313-02, 2006 WL 1835828, *2 (W.D. Pa. 2006) (citing United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)). "A court must grant a motion for a new trial when a reasonable possibility exists that a 'trial error had a substantial influence on the verdict.'" United States v. Montgomery, No. 07-349, 2007 WL 4570180, *1 (D.N.J. Dec. 21, 2007) (citing Virgin Islands v. Commissiong, 706 F.Supp. 1172, 1184 (D.V.I. 1989). However, the decision of whether to grant a motion for a new trial is ultimately within the discretion of the trial court. See, e.g., United States v. Saada, 212 F.3d 210, 215 (3d Cir. 2000).

## ANALYSIS

**A.     Severance**

Mr. Pedicini argues that his client, Defendant Brenda Rickard, was denied a fair trial to the extent that she was tried alongside co-defendant Jamila Davis. According to Mr. Pedicini, the discrepancy between the evidence adduced against Defendant Davis and his client, as well as the dichotomy of their respective defenses, resulted in spillover prejudice, and thus, an unfair trial.

---

finds that both motions are more appropriately considered pursuant to Federal Rule of Criminal Procedure 33 ("New Trial").

Federal Rule of Criminal Procedure 8 provides that "the indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Here, Defendants Davis and Rickard were indicted together and were charged with participating in the same conspiracy. The United States Supreme Court has advised that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal citations omitted). However, a court may order separate trials, or sever the defendants' trials, "if the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).

This Court previously denied Defendant Rickard's pre-trial motion to sever, finding that, given the circumstances of this case, the inclusion of an appropriate limiting instruction would suffice to cure any risk of prejudice. Such an instruction was, in fact, given to the jury. See Tr. (Sept. 20, 2007) at 11.24:11-20.[3] Aside from the generalized allegation that the "dichotomy of defenses"[4] made it impossible for the jury to "compartmentalize the evidence,"[5] Mr. Pedicini has given this Court no specific basis on which to find that the joint trial in this matter resulted in "clear and substantial prejudice" to his client. See, e.g., United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981) ("Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal. Rather, he must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial."). Thus, to the extent that Defendant Rickard moves for a new trial on such a basis, any such request is denied.

---

[3] In particular, the Court instructed that "[a] separate crime is alleged against each defendant in each count of the indictment. Each alleged offense, or any evidence pertaining to it, should be considered separately by you. The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that defendant or any other defendant. You must give separate and individual consideration to each charge against each defendant." Tr. (Sept. 20, 2007) at 11.24:11-20.

[4] See generally Zafiro, 506 U.S. at 538-539 (noting that "mutually antagonistic defenses are not prejudicial per se").

[5] See generally United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982) (noting that "a disparity in the evidence against one of various co-defendants does not in itself entitle that defendant to a severance.").

**B.    Testimony of Shaheer Williams**

   **1.    Admissible as "Intrinsic" Evidence**

Mr. Pedicini also argues that the testimony of cooperating witness Shaheer Williams regarding his prior relationship and business transactions with Defendant Rickard was prejudicial to his client and not admissible pursuant Rule 404(b) or as "intrinsic" evidence. As a preliminary matter, the Court agrees with the Government that the testimony of Shaheer Williams was not admitted pursuant to Rule 404(b); rather, it was admitted as "intrinsic" evidence. See Tr. (Jan. 25, 2007) at 2.44:16-18; 2.47:16-2.48:2. Thus, this Court will limit its analysis to whether this Court erred in allowing Shaheer Williams to testify as to his prior dealings with Defendant Rickard on the basis that such testimony constituted "intrinsic" evidence.

"'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990). Thus, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002). The determination of whether evidence qualifies as intrinsic or extrinsic is "often fuzzy." Id. Nevertheless, the Third Circuit has noted that "acts are intrinsic when they directly prove the charged conspiracy." Id.

The Government originally sought to admit the testimony of Shaheer Williams on the basis that he was expected to provide testimony that prior to the relevant time period, Shaheer Williams was introduced to Defendant Rickard as "someone who could close deals." See Tr. (Jan. 25, 2007) at 2.46:1-14. In particular, the Government argued that the testimony of Shaheer Williams constituted "intrinsic" evidence inasmuch as it would serve to show the development of his business arrangement with Defendant Rickard, and how such an arrangement ultimately blossomed into the conspiracy at issue. Thus, the Government argued – and this Court ultimately agreed – that such evidence could constitute a "necessary preliminary" to the crimes charged, and should therefore be considered "intrinsic evidence."

Mr. Pedicini now argues, in relevant part, that "[t]he evidence presented through Shaheer Williams does not fall within the definition of 'intrinsic evidence.' His prior unrelated dealings with Rickard were not 'inextricably intertwined' and not part of [a] 'single criminal episode' as defined by the Williams' court." (Rickard Br. at 7). This Court disagrees, and instead, maintains that such testimony served to provide the jury with background information relating to (a) Defendant Rickard's prior experience in "flipping" properties, (b) the manner in which Defendant Rickard came to be introduced to Defendant Davis, and (c) the manner in which Defendant Rickard came to engage in business with Defendant Davis. Thus, to the extent that Ms. Rickard moves for a new a trial on the basis that such evidence was improperly introduced as "intrinsic" to the charged conduct, any such request is denied.

4

**C.     Jury Instructions**

    **1.     Willful Blindness Instruction**

Mr. Pedicini also claims that this Court erred in instructing the jury on the concept of willful blindness.[6] In particular, he claims that "[t]o justify this jury instruction, which is devastating to a defendant, there must be evidence that the defendant willfully closed their eyes to that which would otherwise be obvious." (Rickard Br. at 7). Because no such evidence was presented at trial – according to Mr. Pedicini – this instruction was inappropriate.

As a preliminary matter, the Court notes that Defendants did not raise an objection to the "willful blindness" charge at the charge conference. See Tr. (Sept. 19, 2007) 10.195-10:216. In any event, the Court has considered Mr. Pedicini's argument and finds that the record in this case contained sufficient evidence to support a "willful blindness" instruction. For example, Defendant Rickard maintains that no testimony adduced at trial demonstrated that she participated in the solicitation of straw buyers, obtained false documents, communicated with the banks, or engaged in any pre-closing activity other than "normal ministerial duties." Rickard further claims that the evidence did demonstrate that the loans were actually closed by attorney Daniel Ellis, and that she was either out of the office or in a different room when the closings took place. However, the jury could have found that Defendant Rickard deliberately closed her eyes to such ongoing activities, which otherwise would have been obvious to her in light of evidence that she received large sums of money from Daniel Ellis' attorney trust account following such closings.[7] Thus, to the extent that Defendant Rickard moves for a new trial on the basis that this Court erred in instructing the jury on the concept of willful blindness, Defendant's motion is denied.

    **2.     Materiality Instruction**

Mr. Nooter argues, on behalf of his client, Defendant Jamila Davis, that this Court improperly denied his request to remove all or parts of the last paragraph of the proposed instruction on the second element of bank fraud – materiality. (Davis Br. at 7). Mr. Nooter acknowledges that this Court correctly instructed the jury on the following: (a) the government must establish that the scheme to defraud related to a material fact or matter, and (b) a material fact is one which would reasonably be expected to be of concern to a reasonable and prudent

---

[6] The Court notes that Defendant Davis joins in this argument. See Davis Br. at 9.

[7] See, e.g., United States v. Stewart, 185 F.3d 112, 126 (3d Cir. 1999) ("Stewart argued at trial that he lacked the intent to defraud because he relied upon the findings of solvency reported in state examinations and audit reports. But the evidence permitted the jury to conclude that this was simply not the case. The jury could have found that Stewart deliberately closed his eyes to what otherwise would have been obvious to him concerning the financial problems of these companies.").

person in making a decision (such as whether or not to make a mortgage loan).  However, Mr. Nooter takes issue with this Court's inclusion of the following language, which, according to Mr. Nooter, "largely undercut the effect of the materiality requirement":

> It is not necessary for the bank in question to actually have acted upon the facts alleged to be material.  Thus, the United States is not required to prove that the bank relied on these facts, whether any reliance by the bank was justifiable, that the bank was in fact misled or influenced by them, or that the bank suffered any actual loss as a result of them.

In particular, Mr. Nooter claims that "to say that it was not necessary to prove whether the reliance was justifiable contradicted the instruction that it is necessary for the statement to be one upon which a reasonable person would be expected to rely." (Davis Br. at 8).

Mr. Nooter made a similar argument on behalf of his client during the charge conference on September 19, 2007.  At that time, the Court acknowledged Mr. Nooter's argument and explained that "this charge doesn't preclude you from arguing that, but that doesn't mean that [your position] is a correct statement of the law. . . . Unless you show me a case or something that tells me otherwise, I am going to charge it the way it is here." See Tr. (Sept. 19, 2007) at 10.214:19-24.[8]  Mr. Nooter was unable to do so.  Thus, to the extent that Defendant Davis now moves for a new trial on the basis that this Court erred in declining Mr. Nooter's request to remove such language from the materiality charge – despite his inability to provide any legal basis in support of such a theory – Defendant's motion is denied.

**D.     Jury Venire**

During the first day of trial, Mr. Nooter raised a challenge as to the entire jury array, stating, in relevant part: "I cannot believe that here we are sitting in Newark, and . . . out of . . . 43 people, we have only one African-American." Tr. (Sept. 5, 2007) at 44:21-45:1.[9]  Although Mr. Nooter was admittedly unprepared to argue the merits of his challenge on September 5, 2007, see Tr. (Sept. 5, 2007) at 51:9-14, the Court afforded Mr. Nooter with an opportunity to argue his position on the following day.  However, on the following day, after having reviewed the relevant caselaw, Mr. Nooter declined to provide any further argument in connection with his challenge on the following day. See Tr. (Sept. 6, 2007) at 2.4:10-12.  To the contrary, Mr. Nooter conceded that he lacked the relevant evidence to support such a challenge.  Notwithstanding Mr. Nooter's concession, this Court proceeded to engage in its own analysis of Mr. Nooter's position.

---

[8] See, e.g., United States v. Goldblatt, 813 F.2d 619, 624 (3d Cir. 1987) ("The Government was not required to show that PSFS incurred a loss in order to prove a scheme to defraud . . . [or] that the intended victim of the fraud was actually defrauded.").

[9] Mr. Pedicini joined in Mr. Nooter's challenge. See Tr. (Sept. 5, 2007) at 45:23-46:4.

See id. at 2.5:1-17.

This Court began its analysis by explaining that in order to assert such a challenge to the jury selection process, Mr. Nooter was required to set forth a prima facie violation of the fair cross section requirement of the Sixth Amendment and the Jury Selection and Service Act. See id. In order to establish a prima facie violation of the fair cross section requirement of the Sixth Amendment and the Act, Mr. Nooter had the initial burden of establishing the following three prongs:

> (1) the group alleged to be excluded is a "distinctive" group in the community;
> (2) the representation of this group in jury venires is not "fair and reasonable" in relation to the number of such persons in the community; and
> (3) the underrepresentation is caused by the "systematic exclusion of the group in the jury selection process."

United States v. Weaver, 267 F.3d 231, 237 (3d Cir. 2001). The Court went on to find that Mr. Nooter had met his burden in establishing the first prong, namely that African-Americans are a "distinctive" group in the community. See Tr. (Sept. 6, 2007) at 2.5:8-10.[10] The Court then addressed the third prong, and explained that "[t]he problem here is that what you would be unable to show at this juncture, and I have nothing in front of me to make a finding otherwise, is that the under-representation that you claim exists here is due to a systematic exclusion in the jury [selection] process." Id. at 11-15.[11] Mr. Nooter essentially agreed, and stated that "[w]ithout being able now to do a statistical or systematic study of how juries are selected for this federal district, I am not prepared to argue anything further." Tr. (Sept. 6, 2007) at 2.4:6-12. Thus, this Court's denial of Mr. Nooter's challenge was based upon his failure to provide any evidence, whatsoever, of a systematic exclusion of African-Americans in the jury selection process.

Mr. Nooter now argues that this Court erred in denying his challenge to the jury array based on untimeliness reasons, and requests a hearing on the panel selection process so that he may "determine whether the process unfairly excludes members of the African-American community from the jury pool, and if so, grant a new trial." (Davis Br. at 4). In particular, Mr. Nooter explains that "[w]e have not done a study of systematic exclusion over a long period of time because if the motion is being denied on timeliness grounds, it is hardly worth the expense and labor of conducting such an analysis." (Id. at 6).

---

[10] See Weaver, 267 F.3d at 240.

[11] See Weaver, 267 F.3d at 244 (explaining that "systematic exclusion" can be shown by a "large discrepancy repeated over time such that the system must be said to bring about the underrepresentation.").

As a preliminary matter, I note, once again, that my original denial of Mr. Nooter's challenge was not based on timeliness reasons. To the contrary, as previously indicated, while I did mention that "[i]f you are going to challenge this system and the manner in which the jury selection process takes place, there are rules and requirements regarding when that has to be done," id. at 54:11-14,[12] I went on to conduct the relevant legal analysis, and concluded that Mr. Nooter was unable to provide the requisite evidence that "the under-representation that you claim exists here is due to a systematic exclusion in the jury [selection] process." Id. at 2.5:1-17. Thus, to the extent that Mr. Nooter continues to justify his lack of evidentiary support on the fact that this Court allegedly denied his original motion on timeliness grounds, the Court finds Mr. Nooter's rationale to be unconvincing.

In any event, as pointed out by the Government, 28 U.S.C. § 1863(d) specifically requires any motion seeking to challenge compliance with jury selection procedures to contain a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." Mr. Nooter has failed to provide any such sworn statement of facts, or any other type of statistical evidence in support of his challenge to the jury selection process in the District of New Jersey. Accordingly, the Court finds no error in its previous denial of Mr. Nooter's challenge which warrants either a hearing on the issue, or a new trial.

## CONCLUSION

For the reasons set forth above, this Court concludes that none of the errors alleged by Defendants warrant a new trial in this matter. Accordingly, Defendants' motions for a new trial are both DENIED.

An appropriate Order accompanies this Letter Opinion.

                                            Sincerely,

                                             /s/ Jose L. Linares
                                            Jose L. Linares
                                            United States District Judge

---

[12] In so stating, I referred Mr. Nooter to 28 U.S.C. § 1861, which provides, in relevant part, that "[i]n criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." See id. at 54:11-23.